1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROXANNE J., et al.,

11           Plaintiffs,                          No. CIV S-05-2602 KJM

12      vs.

13   NEVADA COUNTY HUMAN
     SERVICES AGENCY,
14
             Defendant.                            <u>ORDER</u>
15   _____/

16              Pending before the court are cross-motions for summary judgment.  Upon review

17   of the documents in support and opposition and supplemental briefing, and for good cause

18   appearing, THE COURT FINDS AS FOLLOWS:

19                                  BACKGROUND

20              This is an action brought under the Individuals with Disability in Education Act,

21   20 U.S.C. § 1400, <u>et seq.</u>.  Through her parents, referred to in this order as plaintiffs, Roxanne J.

22   seeks judicial review of the decision of a California Special Education Hearing Officer ("Hearing

23   Officer") regarding her rights and entitlements under the Individuals with Disabilities in

24   Education Act ("IDEA").[1]

25   _____

26        [1] A fair presentation of the complete factual background can be found in the Administrative
     Decision, at pages 3 to 6.  <u>See</u> Am. Compl., Ex. 1 at 3-6.

                                         1

1    Congress passed IDEA to "ensure that all children with disabilities have available

2  to them a free appropriate public education that emphasizes special education and related

3  services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).  To achieve this goal,

4  IDEA relies on a cooperative process between parents and schools.  Schaffer ex rel. Schaffer  v.

5  Weast, 126 S.Ct. 528, 532 (2005) (citing Board of Ed. of Hendrick Hudson Central School Dist.,

6  Westchester City v. Rowley, 458 U.S. 176, 205-06 (1982)).  The central vehicle for this

7  collaborative process is the Individualized Educational Plan ("IEP").  Id.

8    An IEP is created for every disabled student and serves as a road map for the

9  student's education.  20 U.S.C. § 1414; Schaffer, 126 S.Ct. at 532.  "Each IEP must include an

10  assessment of the child's current educational performance, must articulate measurable

11  educational goals, and must specify the nature of the special services that the school will

12  provide**."**  Schaffer, 126 S.Ct. at 532.  State educational authorities have a duty to identify and

13  evaluate disabled children and develop an IEP for each one.  Id.  In addition, IEPs must be

14  reviewed at least once a year.  Id.

15    Parents play a significant role in the IEP process.  As the Supreme Court has

16  explained:

17       [Parents] must be informed about and consent to evaluations of
         their child under the Act. [20 U.S.C.] § 1414(c)(3).  Parents are
18       included as members of "IEP teams." [20 U.S.C.] § 1414(d)(1)(B).
         They have the right to examine any records relating to their child,
19       and to obtain an "independent educational evaluation of the[ir]
         child." [20 U.S.C.] § 1415(b)(1).  They must be given written prior
20       notice of any changes in an IEP, [20 U.S.C.] § 1415(b)(3), and be
         notified in writing of the procedural safeguards available to them
21       under the Act, [20 U.S.C.] § 1415(d)(1).  If parents believe that an
         IEP is not appropriate, they may seek an administrative "impartial
22       due process hearing." [20 U.S.C.] § 1415(f).

23  Id.  If the parents of a disabled student do not prevail at the administrative due process hearing,

24  known as the Special Education Hearing, they may seek review through a civil action in state or

25  federal court.  20 U.S.C. § 1415(i)(2).

26  /////

2

STANDARD OF REVIEW

Generally, if a party appeals an administrative decision to a district court, to uphold that decision the court must find that the administrative judge's findings of fact are supported by substantial evidence.  Steadman v. Securities & Exch. Comm'n, 450 U.S. 91, 99-100 (1981).  However, in reviewing an administrative decision under IDEA, the court's decision must be supported by the preponderance of the evidence.  20 U.S.C. § 1415 (i)(2).  IDEA provides that "the court ... shall receive the records of the administrative proceedings; ... hear additional evidence at the request of a party; and ... basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id.

Although the Ninth Circuit has characterized the court's review under IDEA as de novo, the requirement that the district court receive the Hearing Officer's record "carries with it the implied requirement that due weight shall be given to the [administrative] proceedings."  Board of Educ. v. Rowley, 458 U.S. 176, 206 (1982); Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir. 1996).  The amount of deference given to the administrative findings is within the court's discretion and increases when the findings are "thorough and careful."  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  A court should give substantial weight to the hearing officer's decision if the court finds that the decision was

/////
/////
/////
/////
/////
/////
/////
/////
/////

1   careful, impartial, and sensitive to the complexities of the issues presented.  Ojai Unified Sch.

2   Dist. v. Jackson, 4 F.3d 1467 (9th Cir. 1993).  In San Diego v. California Special Educ. Hearing

3   Office, the Ninth Circuit stated:

> [T]he court in recognition of the expertise of the administrative
> agency, must consider the findings carefully and endeavor to
> respond to the Hearing Officer's resolution of each material issue.
> After such consideration, the court is free to accept or reject the
> findings in part or in whole ... Despite their discretion to reject the
> administrative findings after carefully considering them, however,
> courts are not permitted simply to ignore the administrative
> findings ... At bottom, the court itself is free to determine
> independently how much weight to give the administrative findings
> in light of the enumerated factors.

10   93 F.3d 1458, 1466 (9th Cir. 1996) (internal citations and quotation marks omitted).

11         The Ninth Circuit also has recognized that the procedure under the IDEA is "not a

12   true summary judgment procedure," but is "essentially ... a bench trial based on a stipulated

13   record."  Ojai, 4 F.3d at 1472.  "It is hard to see what else the district court could do as a practical

14   matter under the statute except read the administrative record, consider the new evidence, and

15   make an independent judgment based on a preponderance of the evidence and giving due weight

16   to the hearing officer's determinations."  Capistrano, 59 F.3d at 892.  "Even though [this method

17   of review] does not fit well into any pigeonhole of the Federal Rules of Civil Procedure ... [it]

18   appears to be what Congress intended under the Act."  Id.  Finally, the party challenging the

19   administrative decision bears the burden of persuasion on its claim.  Clyde K. v. Pullayup Sch.

20   Dist., No.3, 35 F.3d 1396, 1399 (9th Cir. 1994).[2]

21   /////

22   /////

23   /////

24   /////

25

26      [2]  Clyde K. has been superseded by statute on other grounds.  See L.S. v. Newark Unified
Sch. Dist., 2006 WL 1390661 (N.D.Cal. May 22, 2006).

ANALYSIS

I.  Special Educational Hearing Officer Cote's Decision is Entitled to Substantial Deference.

Hearing Officer Cote issued a lengthy and detailed opinion.  She supported her findings with testimony and documentary evidence presented by the parties during the hearing; her decision was impartial and her reasoning was sensitive to the complexities of the case.

Specifically, the hearing lasted for approximately four (4) days during which time Hearing Officer Cote heard oral testimony from thirteen (13) witnesses, received and reviewed documentary evidence and briefs from both parties and heard oral arguments from counsel on both sides.  After considering this evidence, Hearing Officer Cote issued a thirty-four (34) page decision, providing lengthy discussions regarding each of the material issues in dispute.  She decided many of the issues on the basis of oral testimony, considering the content of the testimony itself and assigning weight based on a determination as to the credibility of the witness.

In this court's view, both the diligence with which Hearing Officer Cote approached this task and her administrative expertise weigh heavily in favor of affording substantial deference to Hearing Officer Cote's findings.  See County of San Diego v. Calif. Special Ed. Hearing Office, 93 F.3d at 1466 (holding that deference to Hearing Officer's decision is highest when that decision is thoughtful and careful); Wartenburg, 59 F.3d at 892 ("[D]eference to the hearing officer makes sense in a proceeding under [IDEA] [because of] agency expertise, the decision of the political branches ... to vest a decision initially in the agency, and the costs imposed on all parties of having still another person re-decide the matter from scratch." (internal quotation marks omitted)).  Neither party has successfully cast doubt as to the care, impartiality or sensitivity of Hearing Officer Cote's decision.  See Ojai, 4 F.3d 1467.  Thus, this court affords Hearing Officer Cote's findings substantial deference.

Finally, under IDEA, the parties have the option of presenting the court with evidence not introduced at the Special Education Hearing.  20 U.S.C. § 1415 (i)(2)(C).  Neither

1   party has exercised that right in this case.  Accordingly, the court defers to Hearing Officer

2   Cote's decisions on issues of witness credibility.

3   II.  Plaintiffs are not Entitled to Reimbursement for Extended School Year Services.

4          Plaintiffs seek reimbursement for costs associated with placing Roxanne in

5   "Camp Kodiak," a summer camp for children with ADD, in the summer of 2003.  Am. Compl. at

6   9.  Defendant denies plaintiffs' right of reimbursement for the summer camp, relying on Hearing

7   Officer Cote's decision, which found that plaintiffs had not established a right to extended school

8   year service (ESY). Hearing Officer Cote's decision states, in pertinent part:

>    The IEP reflects the team's decision that Roxanne did not require
>    ESY services.  As discussed above, Roxanne's primary deficits in
>    January 2003 were related to social skills and organization and
>    focus at school.  The IEP dated June 5, 2003 also indicates primary
>    concerns related to organization, social/emotional, and peer
>    relations.  There was no persuasive evidence that because of these
>    deficits, Roxanne required ESY to avoid regression or that she had
>    limited recoupment capacity.  Accordingly, the Hearing Officer
>    finds that the IEP team meetings in January and June of 2003 did
>    not improperly exclude ESY services from Roxanne's IEP.

15  Am. Compl., Ex. 1 at 11.

16          Plaintiffs respond by arguing, in effect, that the IEP team reached the wrong

17  conclusion about the extent of damage that a "2 month hiatus of therapy" would cause and thus

18  plaintiffs are entitled to recover their costs for unilaterally placing Roxanne in the summer camp.

19  Pl.'s Opp'n to Summ. J. at 26.  Plaintiffs' argument is flawed in at least two respects.  First,

20  plaintiffs provide no authority for their proposition that the IEP team was "wrong"; they cite to

21  no case law, statutory authority or expert testimony to support their position.[3]  Because plaintiffs

22  have not established, by a preponderance of the evidence, that the lack of ESY constituted a

23

24  _____

25          [3]  Plaintiffs provide no expert witness testimony establishing that in the summer of 2003,
    Roxanne's disabilities required private placement in a specialized summer camp. Instead, plaintiffs
    rely on a psycho-educational evaluation completed in 2005, some two years after the placement
26  occurred.  Opp'n at 26.

denial of Free Appropriate Public Education (FAPE),[4] they are not entitled to be reimbursed.  See

34 C.F.R. § 300.309 (a)(2) (2003)[5] (stating that "extended school year services must be provided

only if a child's IEP team determines ... that the services are necessary for the provision of FAPE

to the child.").  Accordingly, this court finds that plaintiffs are not entitled to reimbursement for

monies spent on "Camp Kodiak" in the summer of 2003.[6]

III.  Plaintiffs are not Entitled to Reimbursement for Unilateral Private Residential
      Placement Costs.

        Plaintiffs seek reimbursement for costs associated with unilaterally placing

Roxanne at "Alpine Academy," a residential treatment facility in rural Utah, in February 2005.

Am. Compl. at 10-12.  Neither party contests Hearing Officer Cote's finding that during the

2002-2003, 2003-2004 and 2004-2005 school years, defendant's failure to provide certain mental

health services promised in Roxanne's IEPs amounted to a denial of FAPE.  Am. Compl., Ex. 1

at 32-33; Def't's Mot. for Summ. J. at 1: 8-9.  Plaintiffs argue that "under the circumstances of

---

[4]  "[A] child receives a free appropriate public education [FAPE] if the program (1) addresses the child's unique needs, (2) provides adequate support services so the child can take advantage of the educational opportunities, and (3) is in accord with the individualized education program." Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg, 59 F.3d 884, 893 (9th Cir. 1995) (citing Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176 at 188-89 (1982)).

[5]  Title 34 of the Code of Federal Regulations was amended effective October 2006; former section 300.309 is now section 300.106.

[6]  Assuming that plaintiffs were able to establish that defendant's actions (in not providing ESY) amounted to a denial of FAPE, it appears plaintiffs failed to follow procedural requirements for obtaining approval of a private placement such as the Camp Kodiak summer program.  Under 34 C.F.R. § 300.403 (d) (2003), the court has the discretionary power to deny plaintiff's request for reimbursement if certain procedural requirements are not met.  (Former section 300.403 is now section 300.148.  See note 5 above.)  34 C.F.R. § 300.403 (d)(i)-(ii) states that a parent's failure to formally reject the most recent IEP or provide ten (10) days' written notice before removing the child from public school subjects the parents to a limitation on their right of reimbursement.  At oral argument, plaintiffs effectively conceded that the ten day notice period applies in this context, stating that they had sent a letter to defendant in the Spring of 2003 indicating their intent to enroll Roxanne in Camp Kodiak.  However, defendant denied ever having received any such letter. Plaintiff was unable to identify where in the record the letter could be found and the court finds no mention of the letter in the administrative record.

this case, [plaintiffs] have a right to refuse defendant's February 2005 IEP's and Administrative offer based on its [defendant's] failure to follow through on five previous offers of FAPE." Pl.'s Opp'n to Summ. J. at 41:10-13.   Defendant argues that Hearing Officer Cote found the February 2005 IEP sufficient, Roxanne was showing significant signs of improvement under the February 2005 IEP at the time of her removal and that Roxanne's unilateral removal and private placement was not "appropriate" under 34 C.F.R. § 300.403 (c) (2005).  Def't's Mot. for Summ. J. at 20-29; Am. Compl., Ex. 1 at 25-32.   Additionally, defendant argues that plaintiffs failed to give the requisite ten (10) day notice as required by statute before removing a child from public school under 34 C.F.R. § 300.403(d)(1)(ii) (2005).  Def't's Opp'n to Pl.'s Mot. for Summ. J. at 5.   In response, plaintiffs challenge Hearing Officer Cote's finding that the February 2005 IEP was sufficient, in light of the past failures to provide services and a lack of local availability of service providers.  Plaintiffs also argue that their unilateral placement site is "appropriate" given defendant's history of promising services that were not provided.  Pl.'s Opp'n to Mot. for Summ. J. at 40, 42-45.

The record indicates that at the time of Roxanne's removal and placement at Alpine Academy, defendant had made an IEP offer to plaintiffs that was specifically designed to meet Roxanne's mental health needs and was therefore in compliance with FAPE.  Am. Compl., Ex. 1 at 25-28.  Plaintiffs do not appear to contest that the February 2005 IEP, if fully implemented, would constitute FAPE.  Instead, plaintiffs assert their reasonable disbelief in defendant's ability to actually provide the services promised at the point in time offered or on into the future.

/////
/////
/////
/////
/////

1    Hearing Officer Cote found that Roxanne was, in fact, benefitting from the

2    services provided to her during the first half of the 2004-2005 school year, the time period

3    directly preceding her removal.  Id. at 28.  Hearing Officer Cote heard testimony from several

4    expert witnesses and concluded that:

> [T]he overwhelming testimony described above, by multiple
> witnesses who observed or worked with Roxanne in an educational
> environment, establishes that Roxanne continued to have mental
> health needs but that those needs had not changed for the worse
> during the first half of the 2004-2005 school year.  On the contrary,
> their testimony establishes that Roxanne had made significant
> gains in social and behavioral skills during the first half of the
> 2004-2005 school year. The testimony of Roxanne's teacher,
> therapist, and assessors establishes that she was benefitting from
> participation in general education classes and activities, and had
> improved peer relations.  Their testimony also establishes that
> Roxanne was completing schoolwork and receiving passing grades.
> Moreover, the summary of her progress described on the triennial
> assessment confirms that Roxanne had made progress on goals and
> objectives.

13   Id. at 28.

14   Despite the finding that Roxanne had improved during the first half of the 2004-

15   2005 school year, Hearing Officer Cote found that defendant had failed to provide everything it

16   had promised under the 2004-2005 IEPs.  Specifically, Hearing Officer Cote concluded that

17   defendant's failure to provide all of the therapy sessions outlined in the IEP constituted a denial

18   of FAPE.  Id. at 29.  However, Hearing Officer Cote also found that regardless of the denial of

19   FAPE, plaintiffs were not justified in unilaterally placing Roxanne in a private program because

20   defendant had offered appropriate mental health services during the 2004-2005 school year and

21   defendant's failure to provide the "therapy component" of said services had been rectified by the

22   Hearing Officer's order of reimbursement for the cost of compensating services plaintiffs

23   arranged.  Id. at 31.  Additionally, Hearing Officer Cote found that "not one single mental health

24   professional recommended that Roxanne be placed in a residential facility.  All of the mental

25   health professionals recommended that Roxanne receive group, individual, and family therapy to

26   continue to support her placement in an SDC [special day class]."  Id. at 28.  For these reasons,

1  defendant argues that plaintiffs' unilateral placement of Roxanne at Alpine Academy was not

2  "appropriate," even if FAPE was denied and thus IDEA violated.

3        The Supreme Court has held that a court may order a school district to reimburse

4  parents who have unilaterally placed their child into appropriate private special education after

5  the school district has failed to offer appropriate special education.  Burlington Sch. Comm. v.

6  Dep't. of Educ., 471 U.S. 359, 369 (1985).   Additionally, 34 C.F.R. § 300.403 (c) (2005)

7  provides that a court may require a public agency to reimburse parents who unilaterally enroll

8  their child in a private school "if the court or hearing officer finds that the agency had not made

9  FAPE available to the child in a timely manner prior to that enrollment [in the private school]

10  and that the private placement is appropriate."  There is no mandate that a court must order

11  reimbursement after a finding that FAPE was not made available; rather the use of the permissive

12  term "may" suggests that the decision is within a court's discretion.  This semantic construction

13  was embraced by the Supreme Court in Florence County School District Four v. Carter, where

14  the court held:

15        [W]e note that once a court holds that the public placement
          violated IDEA, it is authorized to "grant such relief as the court
16        determines is appropriate." 20 U.S.C. § 1415 (e)(2).  Under this
          provision, "equitable considerations are relevant in fashioning
17        relief," Burlington, 471 U.S., at 374, and the court enjoys "broad
          discretion" in doing so.  Id. at 369.  Courts fashioning equitable
18        discretionary relief under IDEA must consider all relevant factors
          including the appropriate and reasonable level of reimbursement
19        that should be required.  Total reimbursement will not be
          appropriate if the court determines that the cost of private
20        education was unreasonable.

21  510 U.S. 7 (1993).

22        Hearing Officer Cote awarded plaintiffs the amount of services promised, but not

23  provided, under the IEP rather than the full cost of a private placement.  This decision was well

24  within her discretion and seems particularly reasonable in light of the fact that, prior to

25  Roxanne's placement in the private facility, none of the numerous "experts" with whom she had

26  consulted had deemed a residential placement necessary.  Am. Compl., Ex. 1 at 28.  While

1    plaintiffs contest this assertion, they point to no witnesses who called for a placement in a private

2    facility prior to plaintiffs' unilateral placement of Roxanne at Alpine Academy.  Pl.'s Opp'n to

3    Summ. J. at 13-20.  Plaintiffs do point to the testimony of "four mental health professionals" who

4    they assert called for a private placement.  Id. at 20.  Jackie Rodate and Dr. Anne Lin, two

5    professionals who did unequivocally support a private placement, are employed by Alpine

6    Academy and made their determinations well after Roxanne had been placed in their care.

7    Def't's Mot. for Summ. J. at 6; Pl.'s Opp'n to Summ. J. at 17.  Hearing Officer Cote's giving

8    their testimony less weight (or disregarding it entirely) is entirely reasonable.  Neither of the

9    other two purported proponents of private placement made unequivocal statements. Peggy

10   Wiseman, Roxanne's private therapist, refused to testify at the hearing.  Dr. James Clopton

11   indicated that a private placement might be necessary if certain other treatments did not prove

12   effective.  Def't's Mot. for  Summ. J. at 6.

13            Defendant also raises questions as to whether plaintiffs met the procedural notice

14   requirements that are a prerequisite to a unilateral private placement.[7]  See 20 U.S.C.

15   § 1412(a)(10)(C)(iii).  This court need not determine the procedural notice issues because it finds

16   that, even if proper notice was provided, Hearing Officer Cote was well within her discretion in

17   refusing to reimburse plaintiffs for their placement of Roxanne in a private facility, given the lack

18   of evidence suggesting the need for a residential placement.  Accordingly, plaintiffs' claim for

19   reimbursement of their unilateral private placement costs will be denied.

20   /////

21   /////

22   /////

23

24            [7]   The parties' briefs outline their disagreement over whether plaintiffs complied with the
     statutorily required 10 day notice prior to removal of Roxanne from the public school.  Def't's Opp'n
25   to Summ. J. at 6; Reply to Def't's Opp'n to Summ. J. at 10.  Additionally, at oral argument, plaintiffs
     asserted they were excused from the statutory 10 day notice requirement because they had partially
26   rejected defendant's last IEP.

IV.  Plaintiffs are Entitled to Recover Costs for the Psychological Services Provided by Peggy Wiseman.

Hearing Officer Cote found that:

Mental Health [defendant] failed to provide therapy services in conformity to Petitioner's [plaintiff] IEP during the 2002-2003 school year through February of the 2004-2005 school year.  The Hearing Officer finds that Petitioner procured therapy services for Roxanne from a qualified mental health professional to provide services to Roxanne.  The Hearing Officer notes that Ms. Wiseman is under contract to provide services on behalf of Mental Health.  Therefore, Mental Health has acknowledged that Ms. Wiseman is sufficiently qualified to provide services to clients of Mental Health.  Ms. Wiseman met regularly with Roxanne to address her social/emotional needs.  Accordingly, the Hearing Officer finds that the replacement services were designed to address Roxanne's needs and provide her with educational benefit.  Therefore, the parents are entitled to reimbursement for Ms. Wiseman's therapy to the extent that Mental Health failed to provide services.

Am. Compl., Ex. 1 at 29.  Hearing Officer Cote then went on to calculate the number of "missed" sessions based on information supplied by plaintiff finding that:

[r]egarding the number of sessions for which the parents are entitled reimbursement, during the 2002-2003 school year, Mental Health failed to provide approximately 30 therapy sessions. According to Petitioner's calculations, during the 2003-2004 school ear, Mental Health failed to provide 20 sessions of therapy...during the 2004-2005 school year, Mental Health failed to provide weekly therapy services from the beginning of the school year through February 2005 for a total of approximately 15 sessions.  In summary, the Hearing Officer finds that Mental Health failed to provide a total of 65 therapy sessions to Roxanne.

Id. at 29-30.  Plaintiffs argue that Peggy Wiseman's counseling sessions were limited to addressing Roxanne's "social skills," and, as a result, an order of reimbursement limited to Ms. Wiseman's services would not address the lack of therapy for Roxanne's other mental health needs.  Pl.'s Opp'n to Def't's Mot. for Summ. J. at 8.  Defendant concedes liability for failing to provide all the therapy it promised in Roxanne's IEPs and, instead, argues that the remedies described in Hearing Officer Cote's decision will be sufficient to make plaintiffs whole.  Def't's Mot. For Summ. J. at 2.

1    While the court is sensitive to plaintiffs' argument, plaintiffs have failed to

2 establish how, or why, Ms. Wiseman's services failed to "address Roxanne's needs and provide

3 her with educational benefit" required under the most recent IEP.  Am. Compl., Ex. 1 at 29.

4 Affording substantial deference to Hearing Officer Cote's decision, the court orders plaintiffs

5 reimbursed for Ms. Wiseman's therapy as replacement for the services that defendant promised

6 but failed to provide.  As part of her decision, Hearing Officer Cote ordered plaintiffs to turn over

7 proof of the cost for individual sessions with Ms. Wiseman.  Am. Compl., Ex. 1 at 30 n.12.  To

8 date, plaintiffs have not provided this information.  The only information in the record on per

9 session cost is the defendant's good faith estimate of $75.00, to which plaintiffs have not

10 objected.  Def't's Mot. for Summ. J. at 2 n.1.  Accordingly, this court applies this rate to the 65

11 sessions identified by the Hearing Officer as compensable, and holds that plaintiffs are entitled to

12 reimbursement in the amount of $4,875.00.

13 V.   Plaintiffs are Not Entitled to Recovery for the Psychological Services Provided by Dr. James
        Cloptin or Mary Gwaltney.

14    A.      Reimbursement for Dr. James Cloptin's services.

15    Plaintiffs seek reimbursement in the amount of $950.00 for "medication

16 management services" provided by Dr. James Cloptin.  Am. Compl. at 9.  Hearing Officer Cote

17 found that defendant had adequately provided the medication management services required of it

18 under the IEP.  Am. Compl., Ex. 1 at 30.  Plaintiffs provide no argument challenging Hearing

19 Officer Cote's findings, which are well supported by the record. Id.  Plaintiffs' claim for $950.00

20 will be denied.

21    B.      Reimbursement for Mary Gwaltney's services.

22    Plaintiffs also seek reimbursement in the amount of $3350.00 for an independent

23 educational evaluation performed by Mary Gwaltney.  Am. Compl. at 9.  Hearing Officer Cote

24 found that "...Mental Health [defendant] conducted an appropriate assessment of Roxanne.

25 Accordingly, the parents are not entitled to reimbursement for Ms. Gwaltney's assessment."  Am.

26

274e3080259bff28

Compl., Ex. 1 at 31.  Plaintiffs dispute the finding that the assessment was appropriate and

further contend that because defendant "used it to frame its administrative offers" defendant

should have to pay for the report.  Opp'n to Def't's  Mot. for Summ. J. at 25.  Plaintiffs provide

no authority supporting the proposition that defendant's evaluation was inappropriate.  The

Hearing Officer's position is reasonable and supported by the record. Am. Compl., Ex. 1 at 17-

20, 31.  Plaintiffs also do not support their position that defendant should be required to pay for

the use of plaintiffs' evaluation; requiring defendant to pay for the use of plaintiffs' expert

opinion, which was used in an ongoing attempt to reach a compromise on plaintiffs' claim,

would violate well established public policy by penalizing a party seeking to compromise a

claim.  See Van Bronkorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) (describing the

"overriding public interest in settling and quieting litigation.").  Accordingly, plaintiffs' request

for reimbursement in the amount of $3,350.00 will be denied.

                      For the foregoing reasons, IT IS HEREBY ORDERED THAT:

                      1. Plaintiffs' motion for summary judgment is denied.

                      2. Defendant's cross-motion for summary judgment is granted.

                      3. Defendant shall reimburse plaintiffs in the amount of $4,875.00 within thirty

days of this order.

DATED: November 27, 2006.

U.S. MAGISTRATE JUDGE

roxanne.jdg